**John David PALMER, Jr., Plaintiff,**

v.

**Michael E. WILLIAMSON, Defendant.**

**Civ. A. No. SA–85–CA–2170.**

United States District Court,
W.D. Texas,
San Antonio Division.

June 15, 1989.

John M. Doyle, Arthur G. Guzman, Dilley, Ojeda, Lopez & Guzman, San Antonio, Tex., for John David Palmer, Jr.

Steven W. Arronge, City Atty's. Office, S.A., San Antonio, Tex., for Harold R. Bellamy, San Antonio, City of Texas.

Steve W. Arrogne, City Atty's. Office, S.A., Lawrence J. Souza, San Antonio, Tex., for Michael E. Williamson.

## ORDER

PRADO, District Judge.

On this date came on to be considered Defendant Michael E. Williamson's Motion for Summary Judgment, filed on February 22, 1987. For the reasons set out below, the Court is of the opinion that the motion must be granted, and this case dismissed.

This case is before the Court on remand from the Fifth Circuit. In its published opinion, the Court of Appeals sets out the pertinent background facts in this matter, as well as the procedural history of the first presentation of this case before this Court:

On July 17, 1983, Palmer was driving an automobile with a passenger in Converse, Texas, when officers Michael Wiliamson (Williamson) and Harold Bellamy (Bellamy) of the San Antonio police department attempted to stop Palmer's automobile for allegedly disrupting and endangering the neighborhood by squealing tire noise and speeding. Williamson and Bellamy were both off duty at the time in question. Williamson, dressed in a bathing suit and carrying a pistol, jumped into the street in front of Palmer's automobile. Bellamy remained off the street. When Palmer tried to get away, Williamson tried to grab him through the window of the automobile while pointing his pistol at him. As Palmer left the scene in his automobile, Williamson fired his pistol at Palmer and hit the left side of Palmer's automobile.

Palmer stopped his automobile about a mile after in order to inspect it. As he started to return to the scene to find out who had shot at him, a truck suddenly blocked his automobile. Apparently, Williamson had commandeered a truck to follow Palmer's automobile. With his gun drawn, Williamson then pulled Palmer from the automobile. Palmer was arrested by the city of Converse police and charged with public intoxication and assault with a motor vehicle. As Palmer was 16 years old he was tried in Juvenile Court. He was convicted of engaging in delinquent conduct, but that judgment was reversed on appeal.

Subsequently, Palmer filed a complaint in federal court under 42 U.S.C. § 1983 against the city of San Antonio and police officers Williamson and Bellamy alleging a violation of his constitutional rights. The district court dismissed the complaint on the basis that Palmer had only sued the police officers in their official capacity and that Palmer had not alleged any policy or custom of the city of San Antonio that had caused him to be deprived of a federal or constitutional right. Palmer subsequently filed this appeal.

*Palmer v. City of San Antonio, Texas,* 810 F.2d 514, 515 (5th Cir.1987) (footnote omitted). The Fifth Circuit affirmed this Court's dismissal of Plaintiff's claims against the City of San Antonio and the officers involved in their official capacities. However, the Court of Appeals found that, contrary to this Court's view, that paragraphs VII and VIII of Plaintiff's amended complaint stated a claim against Williamson and Bellamy in their individual as well as their official capacities. *Id.* at 517. These paragraphs state:

Each and all of the acts of the Defendants alleged herein were done by the Defendants, and each of them, not as individuals, but under the color and pretense of the statutes, ordinances, regulations, custom and usage of the State of Texas, the City of San Antonio, and the County of Bexar, and under the authority of their office as policemen of such city.

On July 17, 1983, at approximately 5:30 p.m., the Plaintiff was driving his automobile in the City of Converse, County of Bexar, State of Texas, when suddenly the Defendants Harold R. Bellamy and Michael E. Williamson attempted to stop Plaintiff's automobile. Defendant Williamson discharged a firearm at Plaintiff, with the bullet hitting the left side of Plaintiff's automobile. Defendant Williamson followed the Plaintiff and subsequently stopped the Plaintiff's automobile. While pointing his firearm at Plaintiff, Defendant Williamson pulled the Plaintiff from his automobile. The Defendant Williamson used unnecessary physical force on the Plaintiff; such force which far exceeded that which was reasonable and necessary under the circumstances, and which resulted in the deprivation of Plaintiff's liberty without due process of law. The Plaintiff was arrested by the Converse City Police and subsequently charged with assault with a motor vehicle and public intoxication.

Amended Complaint, filed February 19, 1986. After remand, Defendant Bellamy moved for dismissal of any claims against him for failure to state a cause of action upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). Plaintiff did not respond to this motion, and on May 21, 1987, this Court dismissed those claims involving Bellamy.

Thus, at this juncture, all that remains to be determined in this matter are the claims stated in paragraphs VII and VIII against Williamson. It is upon those claims that Williamson now moves for summary judgment.

The Court must first address the standard to be applied in determining whether or not to grant summary judgment. Federal Rule of Civil Procedure 56 provides in pertinent part:

> **Motion and Proceedings [on Summary Judgment].** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Defendants, though movants for summary judgment, will not carry the burden of proof at trial as to the issues the Court now faces. Under recent Supreme Court and Fifth Circuit case law regarding summary judgment, the movant need only present or designate evidence which negates or disproves "the existence of any essential element of the opposing party's claim." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). Once movant has made this showing, the non-movant must then respond with a specific factual showing that there is a genuine issue in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Meyers v. M/V Eugenio C,* 842 F.2d 815, 817, *reh'g granted,* 852 F.2d 806 (5th Cir.1988); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1123 (5th Cir.1988).

Plaintiff's complaint alleges causes of action for unconstitutional use of excessive force by Williamson, in violation of 42 U.S.C. § 1983. Until recently, the elements of such a claim were well-settled, pursuant to the leading case of *Shillingford v. Holmes,* 634 F.2d 263 (1981). As the Fifth Circuit had repeatedly reiterated,

> *Shillingford* [mandated] that ... if the state officers's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances, and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983.

*Stevens v. Corbell,* 832 F.2d 884, 889 (5th Cir.1987) (quoting *Coon v. Ledbetter,* 780 F.2d 1158, 1163 (5th Cir.1986); *accord Lynch v. Cannatella,* 810 F.2d 1363 (5th Cir.1987); *Shillingford,* 634 F.2d at 265. Proving a *Shillingford* case therefore required police conduct that

(1) caused at least meaningful injury;

(2) was grossly disproportionate to the need presented; and

(3) was motivated by malice.

*Hinojosa v. City of Terrell, Texas,* 834 F.2d 1223, 1229 (5th Cir.1988).

The reach of *Shillingford's* application has recently been modified by the Supreme Court, however. In *Graham v. Connor,* — U.S. ——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (decided May 15, 1989), the Court reversed a Fourth Circuit case that had applied a "four-factor" test that paralleled the *Shillingford* test and required a showing of malice. *Id.,* 109 S.Ct. at 1869; *Graham v. City of Charlotte,* 827 F.2d 945 (4th Cir.1987); *see also Johnson v. Glick,* 481 F.2d 1028, 1032–33 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). The Fourth Circuit, like the Fifth, had analyzed excessive force claims under a general "due process" standard, according to which an officer violates the constitution by actions which "shock the conscience." *Graham,* 109 S.Ct. at 1870 (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). The Supreme Court rejected this analysis, holding that

*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment, rather than under a "substantive due process" approach.

109 S.Ct. at 1871.

■ There are two holdings in *Graham* that have direct application to this case. The first is that all claims of excessive force under § 1983 are not "governed by a single generic standard." *Id.* at 1870. Because § 1983 is not itself a source of substantive rights, but merely an enforcement provision "for vindicating federal rights elsewhere conferred," each excessive force claim must be analyzed according to the "specific constitutional right allegedly infringed by the challenged application of force." *Id.* (citing *Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Thus, where a seizure has occurred, the excessive force claim must be analyzed under the provisions of the Fourth Amendment; other claims may touch upon other constitutional protections. The Supreme Court discussed this issue with regard to post-arrest claims:

[O]ur cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today. It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment ... After conviction, the Eighth Amendment serves as the primary source of substantive protection ... in cases ... where the deliberate use of force is challenged as excessive and unjustified.... Any protection that "substantive due process" affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.

109 S.Ct. at 1871 n. 10 (citing *Bell v. Wolfish,* 441 U.S. 520, 535–539, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979) and *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986)). Following the analysis, the Court construes *Graham* to limit the *Shillingford* due process test to those claims not coming within the purview of the Fourth or Eighth Amendment.

The second important holding of *Graham* regards the difference between the elements of proving a Fourth Amendment and a due process claim of excessive force. The Supreme Court held that the "reasonableness" requirement of the Fourth Amendment is very different from the "shock the conscience," due process standard. In so holding, the Court explained that,

[a]s in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circum-

stances confronting them, without regard to their underlying intent or motivation.... An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional ...

Because petitioner's excessive force claim is one arising under the Fourth Amendment, the Court of Appeals erred in analyzing it under the [due process] test. That test, which requires consideration of whether the individual officers acted in "good faith" or "maliciously and sadistically for the very purpose of causing harm," is incompatible with a proper Fourth Amendment analysis. We do not agree with the Court of Appeal's suggestion ... that the "malicious and sadistic" inquiry is merely another way to describing conduct that is objectively unreasonable under the circumstances. Whatever the empirical correlations between "malicious and sadistic" behavior and objective unreasonableness may be, the fact remains that the "malicious and sadistic" factor puts in issue the subjective motivations of the individual officers, which our prior cases make clear has no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment.... The Fourth Amendment inquiry is one of "objective reasonableness" under the circumstances, and subjective concepts like "malice" and "sadism" have no proper place in that inquiry.

*Id.* 109 S.Ct. at 1872–73 (citations and footnotes omitted).

■ In light of *Graham,* it is clear that the *Shillingford* test must be modified to apply to Fourth Amendment excessive force claims. The Court finds that the modification goes to the third, "motivation" element of this test. *Shillingford* required that the officer be motivated by malice; this "subjective" element, while necessary under a due process analysis, is clearly inapplicable, after *Graham,* to an excessive force charge brought in connection with an arrest or other seizure. The Court therefore holds that Plaintiff need not show malice to prevail on his excessive force claim.

■ However, the other elements of *Shillingford,* requiring meaningful injury and gross disproportion between the force used and the force necessary, are objectively ascertainable. They are thus entirely consistent with *Graham.*[1] This is shown by the fact that neither Chief Justice Rehnquist, who delivered the opinion in *Graham,* nor either the majority or dissenting opinions in the Court of Appeal's decision in the case discussed whether other elements of the due process analysis need be amended to conform to the requirements of the Fourth Amendment. *See Graham,* quoted *supra; Graham v. City of Charlotte,* 827 F.2d at 948 (plaintiff's contention that only amount of, need for, and injury from force should be considered is rejected), and 950 (Butzner, J. dissenting) ("[I]t was error to require Graham to prove ... that the police acted 'maliciously and sadistically for the very purpose of causing harm.' "). Accordingly, the Court finds that these two elements still require proof in order to establish an excessive force claim.

■ With the foregoing principles in mind, the Court turns to the facts of the

---

**1.** The Court notes that the prongs of the Fourth Circuit test, left undisturbed in *Graham,* were phrased somewhat differently from the *Shillingford* elements. The Fourth Circuit test inquires into the relationship between the need for and the amount of force used. *Graham v. City of Charlotte,* 827 F.2d at 948; *King v. Blankenship,* 636 F.2d 70 (4th Cir.1980). *Shillingford* and its progeny require that, to prove an excessive force claim, the disproportion between the need for and the amount of force be "gross," and the extent of injury be "meaningful." *Hinojosa, su-* *pra.* The Court finds no significant distinction between the Fourth and Fifth Circuit tests in this regard. The Fourth Circuit test merely discusses the factors to be addressed, while the test in *Hinojosa* discusses the plaintiff's burden. Indeed, the district court in *Graham* found that a directed verdict was mandated because the amount of force used was appropriate, and because there was no discernable injury inflicted. *Graham v. City of Charlotte,* 644 F.Supp. 246, 248–249 (W.D.N.C.1986).

case before it.[2] Plaintiff's excessive force claims are best analyzed in terms of the two "seizures" he alleges: (1) the Defendant's firing at his car; and (2) the later handcuffing and arrest of Plaintiff. With regard to the first allegation, the Court is constrained to find that no "seizure", within the meaning of the Fourth Amendment, occurred. Plaintiff relies on the Supreme Court case of *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), for the proposition that deadly force may not be used against a fleeing suspect who poses no threat of serious physical harm either to the officers or others, in order to prevent escape. *Id.*, 471 U.S. at 11, 105 S.Ct. at 1701. In this case, Williamson arguably used deadly force in firing at Plaintiff's car. However, mere firing does not establish a "seizure" within the meaning of the Fourth Amendment. As the Supreme Court held in *Graham*, "a 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, ... in some way restrained the liberty of a citizen." 109 S.Ct. at 1871 n. 10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 18 n. 16, 20 L.Ed.2d 889 (1968)). The Supreme Court recently elaborated on this standard in *Brower v. County of Inyo*, — U.S. —, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), where it held that a § 1983 complaint involving a car crash into a police roadblock alleged a "seizure" under the Fourth Amendment:

> We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

*Id.* 109 S.Ct. at 1382. In this case, even if Williamson meant to stop Palmer by firing his gun at the car as it pulled away, Palmer was not stopped. Thus, no seizure had occurred in this case until Palmer returned to the scene of the incident, and was stopped and arrested.

However, whether a seizure occurred or not makes little difference in the disposition of this case. The Court finds that a Fifth Amendment standard should be applied to the initial, pre-seizure encounter, while a Fourth Amendment standard must be applied to the later arrest. Under either standard, Plaintiff has failed to raise a genuine issue of fact as to his suffering meaningful injury. With regard to the alleged shooting, only Plaintiff's car was even possibly injured. Plaintiff's Amended Complaint neither alleges this as an injury nor requests compensation for it. Without more, the Court cannot find that the bare allegation that a bullet struck Plaintiff's car alleges a meaningful injury.

The second alleged seizure, during which Plaintiff was arrested and handcuffed, likewise fails to survive Williamson's motion for summary judgment. Plaintiff's deposition establishes that he suffered no meaningful injury during his arrest. Plaintiff's Deposition, at 48–49 (any injuries were "nothing major," and Plaintiff never sought medical attention as a result of the incident). By submitting this evidence, Williamson negated an element of Plaintiff's case; Plaintiff has failed to respond to this evidence. Summary judgment must therefore be granted in favor of Williamson on this ground. Fed. R.Civ.P. 56(e) (if the adverse party does not respond to a properly supported summary judgment motion, "judgment, if appropriate, *shall* be entered against the adverse party").

The requirement of some meaningful injury in excessive force cases, regardless of the constitutional provision invoked, has an

---

**2.** Initially, the Court notes that, while the facts stated by the Fifth Circuit were gleaned from the Plaintiff's complaint rather than from any evidence, Plaintiff's deposition, taken on October 29, 1987 and attached as a supplement to Defendant's motion for summary judgment on February 24, 1988, states virtually the same facts as alleged by the complaint. This deposition, along with Defendant's affidavit and an affidavit by Ronald H. Rogers, Ph.D., is the only summary judgment evidence presented to the Court for consideration. All of this evidence was presented by Defendant.

important purpose: to distinguish those cases in which the injury alleged or proved "is so minor as to occasion only a tort claim, not a constitutional violation." *Lynch v. Cannatella,* 810 F.2d at 1375; *Shillingford,* 634 F.2d at 265 (citing *Baker v. McCollan,* 443 U.S. at 146, 99 S.Ct. at 2695). This case may be distinguished on just this ground. In light of the allegations and the evidence presented, it sets forth no constitutional claim that may be addressed by the Court.

Accordingly, Defendant's Motion for Summary Judgment is GRANTED, such that this case is DISMISSED.